# UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA
V.
LOWELL T. MANNING
P.O. BOX 187
BEDFORD, MA 01730

AFFIDAVIT

CASE NUMBER: 04-1406-CBS

I, MICHAEL P. MULDOON, a Hanscom Air Force Base ("HAFB") Security Forces Officer, depose and say as follows:

1. I make this affidavit of my own personal knowledge, except where otherwise indicated.

2. In my capacity as an HAFB Security Forces Officer, I was dispatched to assist SGT WILLIAM BOYDEN to investigate possible violations of 18 U.S.C. 13 (the Assimilated Crimes Act) and Mass. Gen. L. ch. 90, 24 (driving while under the influence of intoxicating liquor) by LOWELL T. MANNING on 5 September 2004. In so doing, I spoke to officers who interacted with MANNING on that date and I reviewed the incident report that was filed. In so doing, I learned the following.

3. On 5 September 2004, at approximately 0155, William Boyden, SGT, Security Forces Officer, while driving through the rear parking lot adjacent to Building #1420/Lodging, observed a vehicle parked with its motor running and headlights on. SGT Boyden stopped and approached the vehicle and discovered a male passed out in the driver's seat. He attempted to wake him by knocking on the window several times. When the SUBJECT came to, he rolled down his window and SGT Boyden noticed a strong odor of alcohol emitting from the vehicle. SGT Boyden asked the SUBJECT to produce identification. The SUBJECT appeared confused and could not manage to remove his identification from his wallet. The SUBJECT handed his wallet to SGT Boyden and SGT Boyden had to remove his identification for him. SUBJECT was identified as LOWELL T. MANNING. SGT Boyden asked MANNING if everything was alright and MANNING shook his head left to right. SGT Boyden repeated his question and MANNING said "yeah, yeah, I had a fight with my girlfriend." SGT Boyden asked MANNING if he lived on base and he answered "no." SGT Boyden further questioned why MANNING was in the parking lot and where he had driven from. MANNING replied that he was in the parking lot because "it was a safe place" and he had driven from Springfield. SGT Boyden then asked MANNING for his license and registration and MANNING turned his head from left to right for a couple of seconds and said he did not have his license on him. SGT Boyden asked MANNING again for his registration. MANNING then opened his glove compartment and moved some papers around and stated that he did not know where it was. SGT Boyden noticed that MANNING's speech was slurred and he was having trouble focusing so he called the Law Enforcement Desk for assistance. While questioning MANNING and awaiting assistance, SGT Boyden observed what appeared to be fresh damage to MANNING's vehicle including damage to the passenger side front fender, right front tire, passenger side rear fender and to the passenger side rear wheel-well, which interfered with the rear tire.

4. At approximately 0200, I was dispatched to SGT Boyden's location. SGT Boyden briefed me on the matter, and I made contact with MANNING. I informed MANNING that I was going to administer a Field Sobriety Test on him to which he consented. I asked him if he had any physical conditions or injuries which would prevent him from performing the test. MANNING told me he had had surgery on his right ankle/tendon. Taking this into account, I administered the One Leg stand, asking him to stand on his left leg and raise his right leg. I had to explain the instructions to MANNING twice before he understood. During the test, MANNING was very unsteady and swayed from side to side using his arms to control his balance. He also stumbled to his left during the test and had to place his raised right foot on the ground to keep from falling. I then administered the 9 Step Walk and Turn test. Again, I had to explain the instructions to MANNING twice before he understood. During the test, MANNING did not count out loud, took 15 steps instead of 9, and was unsteady while walking. At that point I terminated further testing due to obvious impairment and safety concerns and informed MANNING he was being detained for suspected OUI. I then informed SGT Boyden and SSgt Mackay to transport MANNING to the State Police Barracks in Concord to administer a breath test due to Hanscom Security Forces Intoxilizer not being in operation.

5. SGT Boyden and SSgt Mackay then transported MANNING to the Massachusetts State Police, Concord Barracks. At 0315 MANNING signed an Implied Consent Form and a Breath Test was performed from 0318 to 0322 by Trooper Glen Cote. The result of the Breath Test showed that the Blood Alcohol Content of MANNING's breath was .08% BrAC.

6. Based on the foregoing, I have probable cause to believe that on 5 September 2004, LOWELL T. MANNING, while under the influence of intoxicating liquor, did operate a motor vehicle on a way to which the public has a right of access as invitees or licensees, in violation of Mass. Gen. L. ch. 90, 24(1)9a)(1) and 18 U.S.C. 13.

_____
MICHAEL P. MULDOON, SSgt, USAF

Subscribed and sworn to before me on the 17th day of November 2004, at Hanscom AFB, Massachusetts.

_____
CHARLES B. SWARTWOOD III
United States Magistrate